DE MUNIZ, C. J.,
specially concurring.
I concur in the majority’s evaluation that the record in this case is inadequate to permit a reasonable jury to conclude that defendant Willamette Spine Center, LLC held out Dr. Borman to plaintiff as its agent for the delivery of medical services. I do so because plaintiff has failed to present sufficient evidence that it was defendant — and not some other party — that was responsible for misleading plaintiff as to the affiliations of the providers at the ‘Willamette Spine Center.” However, the majority also concludes that, even if plaintiff had established defendant’s responsibility for the conduct alleged, no reasonable jury could find that plaintiff actually or reasonably relied on that conduct to infer that the Willamette Spine Center was a group medical clinic. In my view, that second holding is both incorrect and unnecessary to decide in this case. I write separately to express my view that the record in this case is sufficient for a reasonable jury to find that someone is holding out the individual providers in the Willamette Spine Center building as agents of a unified group medical clinic providing an array of medical services, in a manner that, upon proper proof of the identity of the *754 principal, is sufficient to create a factual question about the principal’s vicarious liability for Borman’s malpractice.
In this case, the record shows that Dr. Freeman[1] invited plaintiff to seek care at “his clinic, the Willamette Spine Center,” both from Freeman himself and from another provider at the clinic. When that initial care proved ineffective, Freeman sent plaintiff to a third provider practicing on the premises, Borman, who Freeman referred to as “one of the Willamette Spine Center surgeons.”[2] The building in which those providers worked was prominently labeled as the “Willamette Spine Center” on the faade of the building itself, as well as on a sign in front of the building, which also featured a distinctive logo comprised of the letters “WSC,” with the letter “S” slightly enlarged and stylized to suggest a spine. A list of all of the tenants in the building, which included the names of both individual providers and providers operating as LLCs, was inscribed on the glass next to the front entrance to the building. Inside the building, although there was no centralized receptionist, staff, or waiting room, some of the providers, including Borman, shared space and staff with other providers at the facility. All of the providers in the building used business cards with the same stylized logo that appeared on the sign in front of the building, with the words ‘Willamette Spine Center” prominently displayed above (and in a larger font than) the provider’s own name.
The record also reflects that the Willamette Spine Center name and logo were used in public advertisements in a manner that strongly suggested the existence of a single, unified entity providing a broad range of medical services. A web page, once located at www.willamettespinecenter.com, prominently featured the name and logo described above and proclaimed that:
*755 “Willamette Spine Center was developed from a desire to provide comprehensive spinal care and pain management services, equipped with state of the art equipment, dedicated physicians who are expert in the practice, and knowledgeable staff committed to serving the needs of the patients. The patients served by the Willamette Spine Center are individuals with both spinal and pain disorders. The center utilizes all of its medical providers as a multidisciplinary team to assure patients receive the services they need from the onset of the disease process to the completion of a rehabilitative program. We have contracts with most major insurance carriers and work regularly with attorneys to meet the financial needs of our patients.”
In addition, an internet telephone directory advertisement, also using the Willamette Spine Center name and stylized logo, described the center as a “Comprehensive Diagnostic Facility offering: Chiropractic[,] X-Ray, MRI & CT Scans[,] Precision Spine Injection, Diagnostic & Treatment!,] Spine Surgeryt, and] Physical Therapy,” and set out a list of medical practitioners under the heading “WSC Providers.”[3]
I agree with the majority to the extent that it holds that no reasonable jury could find, on the basis of that evidence, that defendant Willamette Spine Center, LLC held out Borman as its agent for the delivery of medical services. The only evidence in the record with regard to the actions of the LLC itself shows that the LLC leased the Willamette Spine Center building from another entity, subleased portions of that building to the various providers who practiced there, and collected rent from those tenants. Although the LLC controlled the building’s signage under the leases, there is no evidence that the LLC designed or erected the signs on *756 its own account or for its own benefit rather than at the behest of its tenants. Likewise, there is no evidence that the LLC issued or approved of the providers’ business cards or placed the advertisements described above. As to Freeman’s statements and conduct, although plaintiff presented evidence that Freeman was a member of the LLC, that evidence alone is insufficient to attribute his actions to the LLC. See 351 Or at 749-50 n 17 (discussing the lack of evidence establishing Freeman’s authority to bind the LLC). For those reasons, I agree with the majority in affirming the trial court’s order granting summary judgment to defendant in this case.
I part ways with the majority, however, to the extent that it holds that, even if plaintiff had established that the LLC had engaged in those acts, that evidence nonetheless would have been insufficient to permit a reasonable jury to hold the LLC vicariously liable for Borman’s malpractice under the doctrine of apparent authority. Drawing all reasonable inferences in favor of plaintiff, as we must, I would hold that a reasonable jury could conclude from the above facts that someone was holding out Borman as an agent of the Willamette Spine Center in a manner that could subject the person or persons responsible for creating that impression to vicarious liability for his malpractice. In strain - ing to find otherwise, the majority improperly fails to consider the evidence in the light most favorable to plaintiff. See ORCP 47 C (permitting the court to grant summary judgment only if, “based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse part/’). For instance, the majority holds that a jury could not reasonably find that the use of the Willamette Spine Center name and logo on the providers’ business cards implied a group medical practice, reasoning that the business cards “reasonably communicated the independence of the individual providers” because “each provider had his or her own individual contact information on the card as well, such as telephone numbers and e-mail addresses.” 351 Or at 749. However, while a reasonable jury could find that the lack of a central e-mail address or telephone number implied the providers’ independence, that is by no means the only reasonable inference a jury could draw from that evidence. A competing *757 inference — and one more favorable to plaintiff — is that those providers carried on a group practice in the form of an entity represented by that name and logo, and perhaps simply chose not to share a central phone line or e-mail address or include that information on their individual cards. Business cards routinely include individual contact information, even when an individual is employed by or affiliated with a larger entity. The inclusion of that information on Borman’s card does not, in my view, render unreasonable any other inference more favorable to plaintiff that the providers’ use of the Willamette Spine Center name and logo might suggest.
Similarly, the majority holds that the list of provider names next to the front door of the building could not reasonably be interpreted to suggest a group practice, because the providers were listed individually and, in some cases, designated as LLCs. Again, however, while a jury could interpret that evidence to indicate that the providers were independent, an equally plausible interpretation — and one more favorable to plaintiff — is that the names were listed together in that central location because the providers were affiliated with one another in a group medical practice. The designation of some of the providers as LLCs does not entirely discredit that inference: LLCs can affiliate with other entities in corporate forms just as natural persons can. See ORS 63.077(2)(g) (permitting an LLC to “[b]e a promoter, incorpo-rator, general partner, limited partner, member, associate or manager of any partnership, joint venture, trust or other entity”). Indeed, the fact that some of those LLCs actually incorporated the designation ‘Willamette Spine Center” into their names could imply to a reasonable person a legally significant affiliation with the clinic.
But for the lack of nexus between those culpable actions and the actions shown to be attributable to defendant here, I would hold that the issue of whether apparent authority existed in this case should be submitted to a jury for resolution under appropriate instructions. In my view, the majority’s unnecessary commentary on that issue improperly fails to draw all reasonable inferences in favor of plaintiff and sets an ill-advised precedent for future courts faced with similar cases.
*758 To compound the problems created by the majority’s erroneous treatment of the facts, the majority also errs in stating that, to establish vicarious liability for a nonemployee agent’s physical conduct, the principal must appear to have a right to control the physical details of the manner of performance that is characteristic of an employee-employer relationship. 351 Or at 738-39. That statement is incorrect. Oregon law does not require a principal to appear to have a right to control the details of the manner of performance by an apparent agent.
The Restatement (Third) of Agency § 2.03 (2006), provides:
“Apparent authority is the power held by an agent or other actor to affect a principal’s legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal’s manifestations.”
The Restatement (Second) of Agency § 267 (1958), provides:
“One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.”
The majority quotes those sources but does not apply the test that they describe. 351 Or at 737-38 n 5, 738-39, 745-46 n 13). Instead the majority declares the latter provision imposes specific right-to-control requirements that the provision does not contain. That is a mistake. The majority should not bury its statement in a footnote or claim that this court’s case law agrees with the majority’s mistaken view.
There is no unclarity in the above-quoted Restatement provisions, and no Oregon case adopts the majority’s construction. The Restatement provisions correctly address the legal standard for determining the liability of a principal for the lack of due care of an apparent agent without any reference to a proof requirement concerning the principal’s right to control the details of the tortious conduct of the apparent agent. That is so because apparent authority requires a *759 showing, consistent with section 2.03, of a reasonable belief, traceable to the principal’s own conduct, that the apparent agent has authority to act in the matter in question on behalf of the principal, thus leading the tort victim to rely justifiably, as section 267 provides, on the care or skill of the apparent agent as if that person were expressly authorized to act by the principal.
Later in its opinion, the majority sets out the legal standard for determining the vicarious liability of a principal in medical malpractice cases against healthcare entities.[4] The holding in this case turns on that standard and on the Restatement provisions quoted above, not on the majority’s erroneous statements, already discussed, concerning a principal’s vicarious liability for an apparent agent’s tortious conduct. The majority errs in failing to give effect to the full scope of the rules of apparent authority that the Restatement provisions quoted above express.
The medical care industry has undergone vast structural changes in the last few decades. The independent physician who contracts for privileges at the local hospital or makes house calls to provide care for his roster of loyal patients is largely a relic of a bygone era. Modern medical care increasingly is being provided instead by doctors employed by or affiliated with HMOs, insurance companies, and hospitals, as a manifestation of the increasing dependence of the medical practice on institutional resources and expertise. See generally William M. Sage, Enterprise Liability and the Emerging Managed Health Care System, 60 Law & Contemp Probs 159 (1997). The dwindling number of doctors not beholden to those entities is increasingly turning to alternative arrangements like group practices, clinics, and professional corporations — in part for the purpose of managing the ever-increasing costs of malpractice liability to persons like plaintiff here. Id. In turn, it is unsurprising that patients would look to those entities to provide medically appropriate services. In my view, the changing nature and prevalence of those relationships is highly relevant to the *760 issue of what plaintiff could and could not reasonably have assumed about the structure of the particular relationships at issue in this case. It is imperative that the law recognize and accommodate the changing nature of the delivery of medical services in this state.
For the reasons I have set out, I specially concur in the decision of the court.
Durham and Walters, JJ., join this opinion.

 The record reflects that Freeman was both a member of the defendant LLC and a chiropractor who practiced in the Willamette Spine Center building. On at least one occasion (in a biographical paragraph of an academic article he authored), Freeman also identified himself as the “co-medical director of Willamette Spine Center.”

 The record shows that Freeman not only recommended that plaintiff see Borman, but personally arranged the details of plaintiffs appointment and then called plaintiff and told him when to come in.

 The majority disregards those advertisements on the grounds that plaintiff failed to establish that defendant authored the ads, that the ads existed at or before the time plaintiff was injured, or that plaintiff saw the ads prior to his operations. Although I agree that there is insufficient evidence for a reasonable jury to attribute the ads to defendant or find that plaintiff relied on the ads, I find the evidence relevant to show that whoever authored the ads intended for potential patients to view the Willamette Spine Center as a unified group medical practice, both at the time that plaintiffs attorneys accessed the web page for the purposes of this litigation, and, according to the web page, at the time that entity “was developed.” Even if plaintiff did not personally witness every indication of the principal’s intent, that intent is relevant to the question of whether it was objectively reasonable for plaintiff to rely on other evidence of which he did have knowledge.

 351 Or at 739-42. The point of that standard is that the patient looks to the entity as the provider of healthcare, and not only to the doctor who performs the medical services.